# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cv-60082-BLOOM/Valle

CLAUDE LETOURNEAU,
and CINDY LYNN THIBAULT,

    Plaintiffs,

v.

MELODIE CARPIO,

    Defendants.
_____/

## ORDER ON SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff Claude Letourneau's Motion for Summary Judgment, ECF No. [38], Plaintiff Cindy Lynn Thibault's Motion for Summary Judgment, ECF No. [40] (collectively "Plaintiffs' Motions for Summary Judgment"), and Defendant Melodie Carpio's Motion for Summary Judgment, ECF No. [44] ("Defendant's Motion for Summary Judgment"). The Court has carefully considered all Motions, all supporting and opposing filings, the relevant authorities, and is otherwise duly advised. For the reasons that follow, Plaintiffs' Motions for Summary Judgment are granted and Defendant's Motion for Summary Judgment is denied.

## I. BACKGROUND

### A. Plaintiffs' Statement of Facts

Plaintiffs Claude Letourneau ("Mr. Letourneau") and Cindy Lynn Thibault ("Ms. Thibault") (collectively "Plaintiffs") sued Melodie Carpio ("Defendant") for violating the Driver's Privacy Protection Act of 1994, 18 U.S.C. §§ 2721-2725 ("DPPA"). *See* ECF No. [9]. Defendant did not dispute Plaintiffs' respective Statements of Undisputed Material Facts filed in

support of their Motions for Summary Judgment. Local Rule 56.1(b) provides that "[a]ll material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." *See* S.D. Fla. L.R. 56.1(b). To the extent that record evidence supports Plaintiffs' Statements of Undisputed Material Facts, ECF Nos. [39] and [41], these facts are deemed admitted and undisputed as set forth below.

On May 16, 2016, Pembroke Pines Police Department Sergeant Scott Carris randomly audited several police officers' use of the Driver and Vehicle Information Database ("DAVID"). *See* ECF Nos. [39] at [41] at ¶ 1.[1] Defendant was one of the names selected for review as part of the audit. *Id.* at ¶ 2. Sergeant Carris ultimately determined that Defendant improperly accessed Mr. Letourneau's information on the DAVID database 82 times and Ms. Thibault's information 85 times. *Id.* at ¶ 3. Thereafter, on September 16, 2016, Defendant, under oath and with her attorney present, voluntarily answered Sergeant Carris's questions regarding her alleged improper access of DAVID. *Id.* at ¶ 4. During the interview, Defendant admitted that she did not access Plaintiffs' information for any criminal justice reason or other legitimate business purpose. *Id.* at ¶¶ 5-6. Instead, she accessed their information out of curiosity. *Id.* at ¶ 6.

**B.     Defendant's Statement of Facts**

Defendant also submitted a Statement of Material Facts in support of her Motion for Summary Judgment, which proffered additional facts. *See* ECF No. [44-2]. Plaintiffs did not respond to Defendant's Statement of Material Facts. As such, Defendant's proffered facts are

---

[1] Not only did Defendant not dispute Plaintiffs' Statements of Undisputed Material Facts, but Defendant did not oppose Plaintiffs' Motions for Summary Judgment, admitting to liability. Given the lack of opposition, the Court cites directly to Plaintiffs' respective Statements of Undisputed Material Facts, which are supported by the record.

deemed admitted to the extent they are supported by the record.[2] Such undisputed facts are set forth below.

Police officers are limited by the databases they can access and the type of information available to them on such databases. *See* ECF No. [44-1] at ¶ 13. In this case, neither Plaintiff knew that his or her information had been accessed through DAVID or the Florida Crime Information Centers ("FCIC") databases until Plaintiffs requested information through the Florida Department of Law Enforcement by requesting a "TAR." *See* ECF No. [44-5] at 7. There is no evidence that either Plaintiff was a victim of identity theft as a result of Defendant's searches. *See* ECF No. [44-5] at 15, 22; ECF No. [44-6] at 19-20. Some of the information Defendant obtained from the database searches were known to Ms. Thibault's ex-husband, Jared Parke, who is currently engaged to Defendant, such as Ms. Thibault's address and social security number. *See* ECF No. [44-5] at 11 and 12. Ms. Thibault did not lose any job opportunities or miss any work as a result of Defendant's actions. *See* ECF No. [44-5] at 20. Mr. Letourneau works as a pilot and testified that he missed two days from work as a result of Defendant's actions. *See* ECF No. [44-6] at 17. On one such occasion, he received a distressing call from Ms. Thibault, which made him mentally unprepared to fly an airplane, so he was sent home from Minneapolis. *Id.* On those occasions, he took personal time off and did not receive a deduction in his pay. *Id.* at 35. Mr. Letourneau has not treated with a therapist and is not taking any medications to treat psychological distress caused by Defendant's actions. *See* ECF No. [44-6] at 16. It is also undisputed that Defendant did not solicit or recruit other police officers to harass,

---

[2] The Court's review of Defendant's record citations reveals that some of the proffered facts were not supported by the cited testimony, such as claims that Defendant did not harass Plaintiffs. The Plaintiffs' testimony disputes this. Therefore, any unsupported facts are not discussed in this section. Other proffered facts did not accurately characterize the cited testimony, and to that extent, the Court re-characterized the facts based on what is supported by the record, citing to the specific transcript.

stalk or follow Plaintiffs and Mr. Letourneau admits that police officers did not deliberately follow him over the last four years. *See* ECF No. [44-1]; ECF No. [44-6] at 29.

## II. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, L.L.C., 327 F. App'x

819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it is satisfied that all of the evidence on the record supports the uncontroverted material facts that the movant has proposed. *See Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## III. DISCUSSION

### A. Plaintiffs' Motions for Summary Judgment

Plaintiffs seek summary judgment on the question of Defendant's liability under the DPPA and ask the Court to set this case for a hearing or a trial for a determination of their damages. *See* ECF Nos. [38] and [40] at 4. Defendant admits liability and does not oppose Plaintiffs' Motions for Summary Judgment to the extent they seek an adjudication of fault. *See* ECF No. [54] at 3 ("Since the issue of liability has been conceded . . ."); ECF No. [54] at 5 ("Liability has been admitted by the Defendant."). Instead, the parties dispute whether Plaintiffs' damages can be determined on summary judgment – a matter raised in Defendant's Motion. Thus, to the extent Defendant concedes liability for violations of the DPPA alleged in the

Amended Complaint, Plaintiffs' Motions for Summary Judgment are granted. The Court now addresses the question of damages.

### B. Defendant's Motion for Summary Judgment

This case stems from Defendant's admitted violation of the DPPA, which provides as follows:

> **(a) Cause of action.**--A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.
>
> **(b) Remedies.**--The court may award—
>
> > **(1)** actual damages, but not less than liquidated damages in the amount of $2,500;
> > **(2)** punitive damages upon proof of willful or reckless disregard of the law;
> > **(3)** reasonable attorneys' fees and other litigation costs reasonably incurred; and
> > **(4)** such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2724.

Defendant's Motion for Summary Judgment seeks to limit each Plaintiff to an award of $2,500 in liquidated damages under the DPPA. *See* ECF No. [44]. In support of this position, Defendant argues there is no evidence of actual damages; therefore, a liquidated damages award of $2,500 must be awarded. *Id.* In addition, Defendant seeks to limit Plaintiffs' liquidated damages to one award of $2,500 for each Plaintiff as opposed to an award of $2,500 per Plaintiff *per violation*. *Id.* Finally, Defendant requests summary judgment on Plaintiffs' claim for punitive damages. *Id.* Plaintiffs, on the other hand, dispute that any of their damages can be

decided on summary judgment and instead request an evidentiary hearing for a damages determination.[3]  *See* ECF No. [51].

### 1. Actual Damages

As to the first element of Plaintiffs' damages, actual damages, Defendant seeks summary judgment in her favor, arguing that Plaintiffs cannot demonstrate they suffered any such damages and are, therefore, limited to $2,500 in liquidated damages. As proof of Plaintiffs' lack of actual damages, Defendant argues that neither Plaintiff knew their information had been accessed through DAVID or FCIC until they made a public records request, Plaintiffs were not victims of identity theft, Plaintiffs did not lose any income, and Mr. Letourneau has not treated with a therapist and is not taking any medications to treat psychological distress caused by Defendant's actions. *See* ECF No. [44] at 4-5. Although Plaintiffs claim damages such as "disruption, fear, suspicion, loss of sleep, damage to reputation, stress and time spent trying to protect family," Defendant argues these do not qualify as "actual damages" under the DPPA. *Id.* at 5-6. According to Defendant, this is because the "DPPA does not provide for violations of one's privacy as an actual damage." *Id.* at 5. In support of this conclusion, Defendant asks the Court to analogize the Privacy Act to the DPPA and find that emotional distress damages are not recoverable as "actual damages," much like the Supreme Court did when analyzing damages

---

[3] In the Amended Complaint, Plaintiffs demanded a trial by jury for their DPPA claims against Defendant. *See* ECF No. [15], Counts I and V.  Likewise, in her Answer and Affirmative Defenses, Defendant demanded "a trial by jury on all issues so triable." ECF No. [35] at 5. However, in their summary judgment briefs, the parties inconsistently suggest that damages can be determined by way of an evidentiary hearing or trial. In either event, the parties have not filed anything in the record waiving their respective rights to a jury trial. The parties are entitled to have the issue of punitive damages under the DPPA determined by a jury if a genuine issue of material fact exists. *See Pichler v. UNITE*, 542 F.3d 380, 390 (3d Cir. 2008) ("In sum, where there is a genuine issue of material fact regarding the willfulness or recklessness of a defendant's conduct, we hold that the Seventh Amendment requires a trial by jury on the issue of punitive damages under the DPPA."). At the upcoming calendar call on Tuesday, January 2, 2018, the parties should be prepared to address whether they have agreed to waive their right to a jury trial on the issue of Plaintiffs' damages.

under the Privacy Act in *F.A.A. v. Cooper*, 566 U.S. 284, 294 (2012). *Id.* at 5-6. Notably, Defendant does not cite to any decisions in which courts have accepted this analogy under the DPPA, and, to the contrary, other district courts have considered and rejected this precise argument. *See Potocnik v. Carlson*, No. 13-cv-2093 (PJS/HB), 2016 WL 3919950, *12 (D. Minn. July 15, 2016).

In *Potocnik*, the defendant asked the district court to apply the same conclusion from the Supreme Court's analysis of the Privacy Act in *Cooper* to the DPPA. *Id.* Rejecting such an approach, the district court explained that, in *Cooper*, the Supreme Court analyzed the scope of the federal government's sovereign immunity waiver, which required a narrow reading of the term "actual damages." *Id.* The DPPA presents no such sovereign immunity waiver concerns. *Id.* Instead, consideration must be given to the purpose and context in which the DPPA was enacted - a "crime-fighting, privacy-protecting measure that was enacted partly in response to the murder of actress Rebecca Schaeffer, who was killed after a deranged fan obtained her address from a motor-vehicle database." *Id.* Although invasions of privacy under the DPPA will rarely result in an economic loss, they are likely to cause emotional distress. *Id.* As the *Potocnik* court concluded, "[i]t is highly unlikely that Congress intended to deprive the very type of victim who inspired the passage of the DPPA – that is, victims like Rebecca Schaeffer - from any recovery under the Act" simply because they did not sustain an economic loss. *Id. See also Karasov v. Caplan Law Firm, P.A.*, No. 14-CV-1503 (SRN/BRT), 2016 WL 6836930, *15 (D. Minn. Nov. 18, 2016) (adopting analysis in *Potocnik*). Here, Defendant has not directed this Court to any contrary authority concluding that "actual damages" under the DPPA is limited to pecuniary damages, much less any binding authority within the Eleventh Circuit. Finding that the DPPA's

"actual damages" provision indeed includes both pecuniary and non-pecuniary damages, the Court finds that an issue of fact exists as to whether Plaintiffs sustained "actual damages."

Even if emotional harm damages were not considered "actual damages," the record contains evidence of at least some pecuniary loss, creating an issue of fact on this element of Plaintiffs' claim. In particular, Defendant directs the Court to Plaintiffs' Answers to Interrogatory Number 3 as evidence regarding the lack of economic damages. However, in this discovery response, Plaintiffs affirmatively state that they have incurred economic damages consisting of the installation of "a home surveillance system and alarm system based on [their] increasing suspicion and fear that [they] were being searched and harassed." ECF Nos. [44-3] and [44-4]. Defendant's Statement of Facts also directed the Court to Mr. Letourneau's testimony wherein he described his "actual damages" as days he missed from work requiring that he use his personal days for time off and the cost of an ADT security system and camera that he installed, explaining that he "never had to put cameras . . . until now." ECF No. [44-6] at 32-33. Thus, at a minimum, Plaintiffs presented evidence of economic damages sufficient to create an issue of fact on the existence of "actual damages."

### 2. Liquidated Damages

Defendant next asks the Court to limit any liquidated damages award to $2,500 per Plaintiff. According to Defendant, a per-violation liquidated damages award would be "out of step with the intent of th[e DPPA] statute and would automatically become punitive without justification." *See* ECF No. [44] at 8. In response, Plaintiffs argue that they are entitled to $2,500 per DPPA violation; otherwise, "violators of the DPPA have a blank check in this regard to continue violating after the first transgression." ECF No. [51] at 7. Under this scenario, Mr.

Letourneau would be awarded $205,000 in liquidated damages while Ms. Thibault would be awarded $212,500.

The Eleventh Circuit recently analyzed whether the DPPA provides for a singular sum of liquidated damages or a per-violation sum. *See Ela v. Destefano*, 869 F.3d 1198, 1202-03 (11th Cir. 2017). In *Ela*, which is factually analogous to this case, the defendant police officer accessed law enforcement databases to search the plaintiff without a legitimate business or law enforcement purpose. *Id.* at 1200. The defendant never used or disclosed the information. *Id.* At trial, a jury found the plaintiff had not sustained any actual damages, so the trial court awarded her $2,500 in liquidated damages under the DPPA. *Id.* Deciding an issue of first impression within the Eleventh Circuit, the appellate court was asked to determine whether the liquidated damages provision of the DPPA applies on a global basis or a per-violation basis. *Id.* at 1201. Recognizing that the text of § 2724 "does not explicitly require per violation awards, but it does not seem to foreclose them either," the Eleventh Circuit concluded that the district court appropriately fashioned a damages award appropriate to the situation. *Id.* at 1202. The statutory context of the DPPA further supported this interpretation as Congress required cumulative damages under the criminal section of the DPPA, § 2723, but did not explicitly require cumulative damages within the civil section, § 2724. *Id.* Thus, had Congress intended to allow liquidated damages on a per-violation basis, it would have stated so. *Id.*

In their Response, Plaintiffs do not address *Ela* or otherwise attempt to distinguish it. *See* ECF No. [51] at 6-7.[4] Instead, Plaintiffs direct the Court to a single decision from the District of Minnesota for the proposition that each individual database access is a DPPA claim even if they

---

[4] Plaintiffs simply cite to *Ela* and state that "if this Court somehow agrees with Defendant Carpio and finds Plaintiffs did not suffer actual damages, the Court must award at least $2,500 in liquidated damages if any DPPA violation is established." ECF No. [51] at 6.

10

occurred in rapid succession to one another. *See Rollins v. City of Albert Lea*, 79 F. Supp. 3d 946, 974 (D. Minn. 2014). The *Rollins* decision, however, does not support Plaintiffs' assertion that each DPPA violation entitles them to a separate liquidated damages award of $2,500. *Id.*

Much like Plaintiffs here, the plaintiff in *Ela* argued that such limited liquidated damages would allow police officers to take advantage of their position of power to access private information. *Id.* at 1203. However, that is not the case under the DPPA as the statute provides for punitive damages specifically designed to deter this precise abuse of power. *Id.* Moreover, "[r]eading 'per violation' into the statute's liquidated damages clause to mandate cumulative damages would enable unharmed plaintiffs to abuse this provision." *Id.* As such, in applying the Eleventh Circuit's guidance from *Ela* to this case, the Court declines to read a "per violation" requirement for liquidated damages under the DPPA. If Plaintiffs believe Defendant abused her position as a police officer by repeatedly searching their records in the DAVID database, Plaintiffs may raise such an argument in support of their claim for punitive damages. To find otherwise would require this Court to read language into the DPPA that Congress did not include.

### 3. Punitive Damages

Finally, Defendant seeks summary judgment on Plaintiffs' claim for punitive damages, asking the Court to exercise its discretion to not award such damages. According to Defendant, punitive damages are not warranted because she did not cause Plaintiffs any physical harm, did not steal their identities, and there was no malice or trickery on her part. *See* ECF No. [44] at 10-11. Put simply, Defendant believes punitive damages cannot be awarded unless she misused the information once she obtained it. *See* ECF No. [44] at 11; ECF No. [54] at 5. Even if Defendant did not misuse the information from the DAVID searches, this evidence does not dispose of a

claim for punitive damages under the DPPA. The statute allows for the imposition of punitive damages "upon proof of willful or reckless disregard of the law." 18 U.S.C. § 2724. *See also Pichler v. UNITE*, 542 F.3d 380, 397 (3d Cir. 2008) ("We cannot conceive of what willful or reckless disregard for the DPPA could be other than where a 'party appreciated it was engaging in wrongful conduct' under the DPPA). *Compare with English v. Parker*, No. 6:09-CV-1914-ORL-31, 2011 WL 1842890, at *5 (M.D. Fla. May 16, 2011) ("The record is devoid of any evidence that Ryan English knew of the existence of the DPPA, much less willfully or recklessly disregarded it."). There is no statutory requirement that the violator improperly use the information derived in violation of the DPPA – only that the individual knowingly or recklessly violate the DPPA.

Here, it is undisputed that Defendant was accessing Plaintiffs' information on DAVID without any criminal justice or legitimate business purpose and was instead doing so out of curiosity. *See* ECF No. [42-3] at 5. In fact, she accessed Mr. Letourneau's information 82 times and Ms. Thibault's information 85 times. Defendant also admitted in her sworn statement that, prior to using the DAVID database, she was required to take a test that informs her of the database's proper usage and that none of her searches fell within the permitted usage. *Id.* at 9-11. Such evidence creates an issue of fact as to whether Defendant willfully or recklessly disregarded the DPPA given that she knew of the proper use of DAVID, was trained on the permitted uses, and she repeatedly accessed Plaintiff's information for non-permitted uses in violation of the statute. Although Defendant argues that she has been punished enough by her employer and should not be punished any further in this legal proceeding, such adverse employment consequences do not dispose of Plaintiffs' statutory right to seek punitive damages

at trial. Given the disputed issues of fact surrounding Plaintiffs' entitlement to punitive damages, summary judgment on this claim in Defendant's favor must be denied.

## IV. CONCLUSION

For all of the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff Claude Letourneau's Motion for Summary Judgment, **ECF No. [38]**, is **GRANTED**;

2. Plaintiff Cindy Lynn Thibault's Motion for Summary Judgment, **ECF No. [40]**, is **GRANTED**;

3. Defendant Melodie Carpio's Motion for Summary Judgment, **ECF No. [44]**, is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 5th day of December, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record